IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 22, 2007

## STATE OF TENNESSEE v. MICHAEL RODIQUEZ PAYNE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S48,038      Phyllis H. Miller, Judge**

---

**No. E2006-01718-CCA-R3-CD - Filed July 11, 2007**

---

The defendant, Michael Rodiquez Payne, was convicted of aggravated robbery, sentenced to twelve years as a Range I, standard offender, and ordered to pay a fine of $10,000. He filed a timely appeal, arguing that: (1) the evidence was insufficient; (2) he should have received a lesser sentence; and (3) the indictment should have been dismissed because the State lost the audiotaped recording of the first preliminary hearing. Following our review, we affirm the judgment and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

John D. Parker, Jr., Kingsport, Tennessee, for the appellant, Michael Rodiquez Payne.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Jack Lewis Combs, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## FACTS

### Trial

At the defendant's January 2006 trial, Amanda Horne testified that on Saturday, May 31, 2003, she was employed at M-R Cleaners in Kingsport and was alone in the store when the defendant came in at about 10:50 a.m. with some clothing to be cleaned. She noticed the defendant's vehicle, "a small maroonish, reddish color, older type vehicle," because he "[c]ame all the way over to the sidewalk, . . . pulled over to the other lane" and stopped to talk to a woman on the sidewalk before entering the store. She said the defendant was wearing a black baseball cap and a white t-shirt and told her that his name was "Tommy Taylor" and gave his telephone number as 466-3121 and zip code as 24554. As Horne was completing the ticket for the defendant's order, the defendant said, "Hey, don't scream, don't scream, I've got a gun and I'll blow your fucking brains away." He then

pulled up his shirt, revealing what appeared to be the silver handle of a gun inside his pants, and first told her to open the cash register and remove the money and then told her to go to the back of the store where she remained until another man entered the store. Horne then called 9-1-1, and two detectives came to the store and retrieved the shirt, pants, and shorts the defendant had left. Inside a pocket of the shorts, the detectives found a water bill in the name of Paula Cheathem. Horne estimated that her encounter with the defendant lasted six to eight minutes, during which time she could see his face "[v]ery well" and they were close enough to "touch one another." She said that less than $500 was taken during the robbery.

Daniel Huffman testified that the defendant, in a questionnaire regarding his background, stated that he had lived in Gladys, Virginia,[1] for about thirty years and that his daughter and brother lived there.

Paula Cheathem testified that she lived in Bristol, Tennessee, and had met the defendant through her boyfriend, Gary Leonard. The defendant visited Cheathem and Leonard at Cheathem's home about once a week and always came in a small, maroon, older-model car. Cheathem identified her water bill for March 2003 but said she had no idea how the defendant had gotten it. She also identified the pair of pants the defendant had taken to the cleaners as hers.

Tina Howe testified that on May 31, 2003, she was employed at the Microtel Hotel in Kingsport and that a "Michael Thomas" checked out of the hotel at approximately 10:49 a.m. that day. She said that she had seen the defendant before but could not recall when or where and could not say that he was at the hotel that day.

Roy Brummitt testified that the defendant was at his trucking business in Bristol, Tennessee, on Friday, May 30, 2003, from about 10:00 a.m. until 2:30 p.m., but he did not see the defendant on Saturday, May 31. The defendant called Brummitt on Monday, June 2, 2003, because his car, a 1987 maroon Nissan, was broken down. Brummitt had the defendant's car towed to his business where it remained for over a year before he sold it.

Detective Penny McKowski of the Kingsport Police Department testified that she investigated the robbery and that DNA evidence was gathered from the Microtel Hotel where the alleged robber stayed the night before the robbery. She acknowledged that the defendant's DNA was not found on any of the evidence collected.

The forty-six-year-old defendant testified that on Saturday, May 31, 2003, his car, a two-tone, maroon and burgundy 1987 Nissan, was on Volunteer Parkway where it had been broken down for

---

[1] On January 17, 2006, the first day of the defendant's trial, the trial court entered a Judicial Notice stating that the zip code for Gladys, Virginia, is 24554.

two days.[2] He denied any involvement in the robbery, saying that he was at his mother-in-law's house on Volunteer Parkway at the time the robbery took place. He denied that the clothes admitted into evidence were his. He acknowledged that he was born in Gladys, Virginia, and had lived there for about thirty years. He acknowledged that he had tattoos on both of his forearms. Shown a certified copy of his vehicle registration information, the defendant said he could not remember the tag number of his vehicle.[3] He denied ever being at the Capri Motel in Johnson City. He acknowledged that he was convicted of robbery in 2005 and of two counts of felony operating a motor vehicle after being adjudicated an habitual offender in 1997 and that it was illegal for him to drive anywhere.

Testifying as a rebuttal witness for the State, Dorothy Overbeck said that on Sunday, June 1, 2003, she was working as a maid at the Capri Motel in Johnson City. After reading a newspaper article about the robbery in Kingsport, she saw a man and a vehicle matching the descriptions given in the article. She described the man as having tattoos on his arms and wearing a dark ball cap and the car as "either rust color, like primer colored or maroon." She said that she wrote down the tag number of the car and later gave it to Detective McKowski. She said that the defendant looked similar to the man she had seen at the motel, but she could not positively identify him.

Recalled by the State, Detective McKowski testified that Overbeck called her on June 1, 2003, saying she had seen a man and a vehicle fitting the descriptions in the press release. She also told McKowski that the tag number on the vehicle was NFF612.

## Sentencing Hearing

Evelyn Mabry testified that the defendant was her former son-in-law and had lived with her and her husband when not incarcerated. She said that the defendant had worked regularly as a mason and had supported his son. Eddie Mabry, the defendant's former father-in-law, testified that he would help the defendant upon his release from custody. Asked if he had seen any signs of alcohol or drug use by the defendant, Mabry said, "I believe I've seen some of that sign, yeah." He described the defendant as "a fairly decent father" to his son. Robert Manley, the defendant's brother-in-law, testified that the defendant worked regularly and was "pretty good with his child." He said that he would help the defendant upon his release.

The defendant testified that if he were released, he would return to work as a brick mason which he had been doing for thirty years. He acknowledged that he had a drug problem when he lived with his former in-laws. He again denied any involvement in the robbery.

---

[2]On cross-examination, the defendant said that his car had actually broken down on Saturday and was towed on Monday.

[3]The certified copy lists the tag number for a 1987 maroon Nissan registered to Michael R. Payne as NFF612.

Applying enhancement factors (1), previous history of criminal convictions or behavior, and (8), failure to comply with the conditions of a sentence involving release in the community, see Tenn. Code Ann. § 40-35-114(1), (8) (2006), the trial court sentenced the defendant as a Range I, standard offender to twelve years in the Department of Correction to be served consecutively to a prior sentence.

## ANALYSIS

### I. Sufficiency of the Evidence

Contesting the sufficiency of the evidence upon which his conviction is based, the defendant argues that the verdict is contrary to the facts and evidence; that it is insufficient to sustain the conviction; that it preponderates against guilt; and that the trial court should have granted his motion for a directed verdict of acquittal.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of aggravated robbery, the elements of which are set out in Tennessee Code Annotated sections 39-13-401(a) and 39-13-402(a): "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon or [w]here the victim suffers serious bodily injury."

The defendant does not review the evidence or explain why, in his view, it is inadequate. We note that the victim identified the defendant at trial as the man who robbed her, saying that he had been in the store for six to eight minutes and had pulled up his shirt to show that he had a pistol. This evidence is sufficient for a reasonable juror to conclude that the defendant committed the aggravated robbery of the victim.

## II. Sentencing

The defendant argues that the trial court erred in sentencing him to other than the minimum sentence. In our review of this claim, we note initially that the forty-six-year-old defendant has a thirteen-page rap sheet, which shows that he has been convicted of numerous felonies and misdemeanors committed throughout his adult life.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In sentencing the defendant, it is apparent that the trial court properly considered the sentencing principles, as well as all relevant facts and circumstances. Accordingly, our review is *de novo* with a presumption of correctness.

The trial court placed great weight on the defendant's substantial record of previous convictions:

> Enhancing factors, number one applies. He's a Range I offender so he doesn't have to have any other criminal convictions to be a Range I offender. So enhancement factor number one, he has a previous history of criminal convictions in addition to those necessary to establish the appropriate range. His criminal history runs from page 6 through page 18. He's been convicted of at least five offenses, five

felonies plus one that would be a felony if it were in Tennessee and I think it was a felony in the State of Virginia. I think it's one that was probably used to enhance him to a Range III for simple robbery. But anyway, he's got all those convictions. As the General says his convictions range everything from a violation of a driver's license law and registration to fondling a child to assault to violation of habitual traffic offender to stealing, DUI's, driving on suspended license, failure to appear. I mean I'm just naming the different kinds. There may be multiple ones of those. He had an aggravated assault, if this was the charged offense. It said the original charge was a malicious wounding, so I don't know, conviction offense was an assault and battery, so there we go. Then he was, you know, he's got more than one assault. Actually, I'm looking at about four or five here. Several failures to appear. Then there's another assault, petty larceny, trespass, it just goes on and on. Now I give that great weight. Also, that enhancement factor includes a previous history of criminal behavior. The criminal behavior is the illegal drug use. So I give that great weight.

Additionally, the court determined that factor (8) was applicable because the defendant failed to comply with conditions of release into the community. The court reviewed the list of possible mitigating factors and concluded that only factor (13) applied, giving the defendant some credit for his work history.

The offense date in this matter was May 31, 2003, and the defendant was sentenced on June 2, 2006. He executed a waiver for his sentencing which allowed "defendants who are sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, [to] elect to be sentenced under the provisions of the act by executing a waiver of such defendant's ex post facto provisions." See 2005 Tenn. Pub. Acts ch. 353, § 18; Tenn. Code Ann. § 40-35-210 (2006), Compiler's Notes.

While the defendant argues that he should have received the minimum sentence, the record shows that he has a horrendous record of convictions. Accordingly, the record supports application of enhancement factor (1). Additionally, the trial court went through the record of the defendant's convictions, reciting several instances where he had committed offenses, for which he was subsequently convicted, while on probation for previous offenses. Thus, the record supports the application of enhancement factor (8) as well.

### III. Loss of Preliminary Hearing Tape

The defendant argues on appeal that the indictment should have been dismissed with prejudice because, according to him, the State lost the tape recording of the first preliminary hearing and the State's "star witness" testified differently at the preliminary hearing than she did at trial. As to this argument, there are no references made to the record so that we might review what occurred in the trial court as to this claim, nor are any legal authorities provided as to why loss of the tape entitles the defendant to dismissal with prejudice of the indictment. Accordingly, this claim is waived. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b).

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE